

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2008

# Sadiku v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2548

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sadiku v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1167.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2548
_____

HAXHI PELLUMB SADIKU,
                                                    Petitioner,
v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A73-616-135
Immigration Judge: Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 7, 2008
Before:  MCKEE, NYGAARD and ROTH, Circuit Judges

(Opinion filed:  May 21, 2008)
_____

OPINION
_____

PER CURIAM

Petitioner Haxhi P. Sadiku, a native and citizen of Albania, entered the United

States on April 14, 1997 on a nonimmigrant B-1 visa, with authorization to remain until

May 13, 1997.  On November 10, 1999, he was served with a Notice to Appear, alleging

that he was removable under Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8

U.S.C. § 1227(a)(1)(B), as an overstay. At a master calender hearing, he admitted the factual allegations through counsel, Jose Camilo, Esquire, and conceded removability. On August 26, 1997, Sadiku filed his application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of political opinion. At a hearing on the merits on July 10, 2000, the Immigration Judge denied his applications, concluding that he lacked credibility and that conditions had changed in Albania. His application for voluntary departure was denied. On February 5, 2003, the Board of Immigration Appeals affirmed, specifically agreeing with the IJ's findings concerning credibility. Sadiku did not petition for review of this decision.

On March 9, 2007, Sadiku, through new counsel, Timothy G. Griffin, Esquire, filed an untimely, see 8 C.F.R. § 1003.2(c)(2) (providing for 90 day filing deadline), motion to reopen. He alleged that prior counsel inadequately supported and presented his claim that he and his family suffered persecution under the old Communist regime and at the hands of the new Socialist and Democratic Parties. Prior counsel did not, for example, submit evidence that he bore physical scars from torture. Sadiku argued that the filing deadline should be equitably tolled in his case because prior counsel had rendered ineffective assistance in handling his asylum claim, specifically, in failing to prepare him adequately to testify. He noted, however, that he had not filed a complaint with

2

disciplinary authorities because "no violation of applicable disciplinary rules is alleged here."  A.R. 71.  Several new items were submitted in support of the motion to reopen. Sadiku's sister submitted a statement, dated March 19, 2007, in which she noted that his wife was so distraught over the May 1996 stabbing that she suffered a miscarriage. Sadiku's father submitted a statement, dated March 16, 2007, attesting to the circumstances surrounding the stabbing and the miscarriage, A.R. 31.  Other family members submitted recently executed statements as well.  In addition, a nurse, Liri Selim Bici, submitted a statement, dated March 14, 2007, that she was present when three men brought Sadiku to the hospital, wounded and bleeding from stab wounds, and that he remained in the hospital for two weeks.  A.R. 34.

On March 28, 2007, the Board of Immigration Appeals denied the motion to reopen.  The Board concluded that Sadiku's allegations of ineffective assistance were vague and they did not excuse the 4 year delay in filing.  Citing Mahmood v. Gonzales, 427 F.3d 248, 252-53 (3d Cir. 2005), the Board held that Sadiku had failed to show diligence in making his claims against prior counsel in a motion to reopen.  In addition, he had failed to comply with the requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), for making a claim of ineffective assistance.  See also Zheng v. Gonzales, 422 F.3d 98, 106 (3d Cir. 2005).  The Board also declined to exercise its *sua sponte* authority to reopen proceedings.  Sadiku timely petitioned for review of this Board decision in the Court of Appeals for the Second Circuit, and the matter was transferred

here for lack of venue.

We will deny the petition. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). We are not authorized to review the Board's February 5, 2003 decision, because the petition for review is timely, see 8 U.S.C. § 1252(b)(1) (providing for thirty period for filing petition for review), only as to the March 28, 2007 decision. See Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 405-06 (1995) ((holding that, in context of motion for reconsideration or to reopen, Congress envisioned two separate timely petitions for review of two separate final orders). Here, Sadiku did not seek review in this Court of the Board's February 5, 2003 decision, and we thus have no jurisdiction to address the arguments he raises in his brief concerning whether the IJ's and Board's adverse credibility determination is supported by substantial evidence, see 8 U.S.C. § 1252(b)(4)(B); Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).[1]

---

[1] In a statement, A.R. 585-88, and brief, A.R. 606-610, in support of this application, Sadiku explained that he was born in Korca, Albania on April 3, 1965. In 1967, his mother's uncle was arrested by the Communist government of Albania for speaking out in favor of Islam. He was hanged in the center of the city and his body was left hanging for two days. The family was then forced to live in a closed compound for three years. Conditions were very harsh. There were no lights and no running water. There was little food, and beatings were common. In 1969, when his family was freed, they settled in Shingjergi but they continued to be persecuted as "enemies of the state." Sadiku supported the Democratic Party of Albania when it first came to power. On February 21, 1991, he and his brother were on their way to an anti-Communist demonstration when they were arrested and detained for three days, during which time they were interrogated and beaten by the police. In November 1991, he moved to Tirana and opened a small store. He became a member of the Democratic Party and was involved in many meetings in and around Korca. In the summer of 1993, the Socialists were protesting because their leader, Fatos Nano, had been jailed by the Democratic government of Albania. The protest took place in front of his store. The police beat the Socialist protesters with clubs

We review the denial of a motion to reopen under an abuse of discretion standard. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). The Supreme Court has stated that "[m]otions for reopening of immigration proceedings are disfavored," noting that "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Id. We will not disturb the Board's discretionary decision unless it was arbitrary, irrational or contrary to law. See, e.g., Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). "An alien may file one motion to reopen proceedings," and such a motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by

---

and Sadiku tried to intervene. This angered two security officials who then questioned his loyalty to the Democratic Party, took him to a police station, and beat him on his back, head and legs. On May 26, 1996, there were elections in Albania, and rumors that the Democratic Party was trying to manipulate the results. Sadiku went to the polling place, and remained at the center all day. He witnessed police cars with civilians inside, being transported for the purpose of casting votes in favor of Democratic Party leader Sali Berisha. Sadiku was asked to vote more than once and he refused. After returning home for dinner, on his way back to the polling place, he was accosted by three men. His arms were held by two of them, and a third stabbed him twice, in the left part of his torso just below the rib cage, and again on his left shoulder. Someone took him to the hospital in Tirana. He believed that this attack was a direct result of his having refused to participate in manipulating the election for the Democratic Party. Photographs of Sadiku's bare torso showing scars appear in the Administrative Record, A.R. 538. On June 20, 1996, his store was burned down, he thinks by the same people who stabbed him. He and his wife left Tirana on September 9, 1996. His uncle was killed in April 1997 during the violence that occurred when the pyramid investment schemes destroyed the Albanian economy. After his father and brother complained about the lack of real democracy in Albania, their house was burned down. The IJ had several problems with inconsistencies in Sadiku's application regarding events central to his claim, and he expected to see hospital records relating to the stabbing. He also noted inconsistencies in Sadiku's assertions about how and when he entered the United States.

5

affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A),(B). Ordinarily, "[t]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). See also Luntungan v. U.S. Attorney General, 449 F.3d 551, 555 (3d Cir. 2006) (per curiam).

Sadiku's motion to reopen was almost fours year late. Because the motion to reopen was untimely, and none of the exceptions apply,[2] the Board did not abuse its discretion in denying it. Doherty, 502 U.S. at 323; Sevoian, 290 F.3d at 174. In Mahmood, 427 F.3d at 250-51, we held that attorney conduct can provide a basis for equitable tolling of the ninety-day deadline, but failure to exercise due diligence in asserting ineffective assistance of counsel undermines any claim for equitable tolling of the motion to reopen deadline, id. at 252-53. See also Borges v. Gonzales, 402 F.3d 398, 407 (3d Cir. 2005). Here, Sadiku waited almost four years after the Board's decision to file his motion to reopen, and he offered no reason for this lengthy delay. His bald assertion that prior counsel did not tell him that his asylum application had been denied does not account for the four year delay.

In addition, in Lu v. Ashcroft, 259 F.3d 127, 132 (3d Cir. 2001), we held that the Board's procedural requirements for asserting a claim of ineffective assistance of counsel are a reasonable exercise of the Board's discretion. A motion based on a claim of

_____

[2] There are exceptions to the ninety day deadline which are not applicable here. 8 C.F.R. § 1003.2(c)(3).

ineffective assistance of counsel should be supported by an affidavit attesting to the relevant facts that sets forth in detail the agreement that was entered into with prior counsel with respect to the actions to be taken.  Furthermore, prior counsel must be informed of the allegations and allowed the opportunity to respond.  Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities, and if not, why not.  Lozada, 19 I.& N. Dec. at 638. We agree that Sadiku failed to comply with the Lozada requirements.  Thus, the Board's denial of the motion as untimely was not arbitrary, irrational, or contrary to law, and the Board properly exercised its discretion in denying the motion to reopen, see Zheng, 422 F.3d at 106.  Because the motion was untimely, we may not consider its merits, and specifically Sadiku's contention that he had new evidence, the aforementioned statements, that previously were unavailable and thus provided a basis for reopening removal proceedings.

For the foregoing reasons, we will deny the petition for review.